**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

Eastern District of Kentucky
**F I L E D**

AUG 3 1 2018

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES OF AMERICA**

**V.**                                    INDICTMENT NO. _5:18 cr - 106 - GFVT_

**GERALD G. LUNDERGAN and**
**DALE C. EMMONS**                                    **DEFENDANTS**

\*   \*   \*   \*   \*

## INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT ONE
### 18 U.S.C. § 371
### (Conspiracy)

At all times relevant to this Indictment, unless otherwise specified:

### I. Relevant Entities and Individuals

1.      The defendant GERALD G. LUNDERGAN was the owner and president of S.R. Holding Co., Inc., which was a for-profit corporation organized to do business under the laws of the Commonwealth of Kentucky. S.R. Holding Co., Inc. conducted business under various assumed names, including the Lundergan Group, Signature Special Events, and Lundy's Special Events. S.R. Holding Co., Inc. held corporate accounts at various financial institutions.

2.      The defendant DALE C. EMMONS worked as a political consultant and was a corporate officer of Emmons & Company, Inc., a for-profit corporation organized to do business under the laws of the Commonwealth of Kentucky.

3.      Person A was an employee of S.R. Holding Co., Inc., and held the title of vice president of the Lundergan Group.

4.      Person B was an associate of EMMONS, who assisted EMMONS in performing political consulting work.

5.      Candidate A was a family member of LUNDERGAN who was a candidate for the Office of United States Senator from the Commonwealth of Kentucky in the 2014 election cycle.  Political Committee 1 was Candidate A's authorized campaign committee for the Office of United States Senator.  On or about July 1, 2013, Candidate A publicly announced her candidacy for the Office of United States Senator.  On or about July 16, 2013, Candidate A filed with the Office of the Secretary of the United States Senate a certification declaring her candidacy for the Office of United States Senator.

6.      On or about July 30, 2013, Candidate A held a kickoff event for the campaign.  Between on or about July 1, 2013, and on or about November 4, 2014, Candidate A conducted a campaign for the Office of United States Senator.  Throughout the duration of Candidate A's campaign, vendors and consultants provided a variety of services to the campaign.  A primary election was held on or about May 20, 2014, at which Candidate A secured the nomination of a political party for the Office of United

States Senator.  Candidate A lost the general election, at which a United States Senator was voted for, on or about November 4, 2014.

7.     LUNDERGAN actively participated in Candidate A's Senate campaign. This participation included, at times, communication with and direction to campaign employees, consultants, and third-party vendors.  LUNDERGAN's participation also included, at times, the management, approval, and oversight of campaign fundraising activities and payments to consultants and vendors.

8.     EMMONS actively participated in Candidate A's Senate campaign.  This participation included, at times, communication with LUNDERGAN, the provision of political consulting services to Candidate A and Political Committee 1, the supervision and direction of Person B, and communication with and direction to third-party vendors.

## II. The Election Act

9.     The Federal Election Campaign Act of 1971, as amended, 52 U.S.C. § 30101, *et seq.* (hereinafter, the "Election Act"), limited financial influence in the election of candidates for federal office, including the Office of United States Senator, and provided for public disclosure of the financing of federal election campaigns, including as follows:

   a.     The Election Act limited the amount and source of money that may be contributed to a federal candidate or a federal candidate's authorized campaign committee.

b.    The Election Act prohibited contributions by corporations in connection with any election at which a United States Senator is to be voted for, or in connection with any primary election held to select candidates for the Office of United States Senator.

c.    Under the Election Act, prohibited corporate contributions included, but were not limited to, any direct or indirect payment, distribution, loan, advance, deposit, or gift of money, services, or anything of value from a corporation to any candidate or campaign committee in connection with any election to the Office of United States Senator.  Prohibited corporate contributions also included, but were not limited to, the payment by a corporation of compensation for the personal services of any person which are rendered to a political committee without charge for any purpose.

d.    The Election Act prohibited any person from causing a corporate campaign contribution.  The Election Act also prohibited any candidate, political committee, or other person from knowingly accepting or receiving such a corporate contribution.

e.    In 2013 and 2014, the Election Act limited both primary and general election campaign contributions by individuals to $2,600, for a total of $5,200 from any individual to any one candidate; in 2015 and 2016, the Election Act limited both primary and general election campaign

contributions by individuals to $2,700, for a total of $5,400 from any individual to any one candidate.

10.     The Federal Election Commission ("FEC") was an agency and department of the United States responsible for administering the Election Act.  The FEC was responsible for receiving and publicizing specific information about the amounts and sources of political contributions to federal candidates and their political committees.

11.     Pursuant to the Election Act, federal candidates and their campaign committees were required to file periodic reports of receipts and disbursements accurately identifying, among other things, each person who made a contribution to such committee during the relevant reporting period whose contribution or contributions had an aggregate amount or value in excess of $200 within the calendar year or election cycle, together with the date and amount of any such contribution or contributions.  These periodic reports, which were by law transmitted to the FEC and made publicly available, were intended to provide the public with a transparent record of contributions to candidates for federal office, and with information about the sources of funding for federal election campaigns.

### III. The Conspiracy

12.     In or around July 2013, and continuing through in or around January 2016, in the Eastern District of Kentucky and elsewhere, the defendants,

**GERALD G. LUNDERGAN and
DALE C. EMMONS,**

knowingly and voluntarily conspired with each other, and with others known and

unknown to the grand jury, to commit the following offenses against the United States:

a.     To knowingly and willfully make contributions of corporate money in connection with any election at which a United States Senator is to be voted for, and in connection with any primary election to select candidates for United States Senator, which aggregated no less than $25,000 in a calendar year, in violation of Title 52, United States Code, Sections 30118(a) and 30109(d)(1)(A)(i) and Title 18, United States Code, Section 2;

b.     To knowingly and willfully cause the submission of materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Federal Election Commission, a department or agency of the executive branch of the government of the United States, in violation of Title 18, United States Code, Sections 1001(a)(2) and 2; and

c.     To knowingly conceal, cover up, falsify, and make a false entry in records and documents, and cause others to do so, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, and in relation to and contemplation of such matter, in violation of Title 18, United States Code, Sections 1519 and 2.

**A.     The Purpose of the Conspiracy**

13.     It was the purpose of the conspiracy for LUNDERGAN and EMMONS to cause unlawful and unreported corporate contributions from S.R. Holding Co., Inc., to

Candidate A and Political Committee 1, and to cause Political Committee 1 unwittingly to file false reports of contributions that concealed from the FEC and the public the corporate contributions caused by LUNDERGAN and EMMONS.

### B.    The Manner and Means of the Conspiracy

The conspiracy used the following manner and means, among others:

14.    LUNDERGAN and Person A contacted campaign consultants and vendors and directed them to provide services to Political Committee 1 and Candidate A, and further directed them to bill S.R. Holding Co., Inc., for these services.

15.    LUNDERGAN and Person A caused payments to be issued from corporate accounts of S.R. Holding Co., Inc., to campaign consultants and vendors for services rendered to Political Committee 1 and Candidate A.

16.    LUNDERGAN and Person A did not seek reimbursement from Political Committee 1 for these corporate contributions at the time, and sought partial reimbursement from Political Committee 1 only after the issuance of grand jury subpoenas and the execution of search warrants seeking information concerning the conspiracy.

17.    EMMONS provided political consulting services to Political Committee 1 and Candidate A, and sought and received compensation for that work from LUNDERGAN and S.R. Holding Co., Inc.  LUNDERGAN paid EMMONS using S.R. Holding Co., Inc., corporate funds.

18.     EMMONS directed vendors to provide services to Political Committee 1 and Candidate A, and to bill Emmons & Company, Inc., for their services.  EMMONS paid the vendors for these services with Emmons & Company, Inc., funds, and sought and received reimbursement for these payments from LUNDERGAN and S.R. Holding Co., Inc.  LUNDERGAN paid EMMONS using S.R. Holding Co., Inc., corporate funds. EMMONS issued invoices associated with these payments to LUNDERGAN and S.R. Holding Co., Inc., indicating that the invoices were for EMMONS's consulting services, without specificity.

19.     After the general election on or about November 4, 2014, LUNDERGAN used S.R. Holding Co., Inc., corporate funds to pay vendors for services provided to Political Committee 1 during the course of Candidate A's campaign.

20.     LUNDERGAN and EMMONS concealed from Political Committee 1 officials, the FEC, and the public the use of S.R. Holding Co., Inc., corporate funds to make illegal corporate campaign contributions, thereby causing Political Committee 1 unwittingly to file reports with the FEC that were materially false, in that these reports failed to provide accurate information concerning the source and amount of the corporate contributions as required by law.

C.     **Acts in Furtherance of the Conspiracy**

21.     In furtherance of the conspiracy described in Count 1 and to effect the objects of the conspiracy, the defendants named therein and other persons both known and unknown, performed or caused the performance of one or more of the following

overt acts, among others not described herein, in the Eastern District of Kentucky and elsewhere on or about the following dates:

S.R. Holding's Payments to Vendors for July 30, 2013, Campaign Kickoff Event

a.  On or about July 30, 2013, Person A authorized a check in the amount of approximately $4,400.00 from Fifth Third Bank account *****563, which was held in the name of S.R. Holding Co., Inc., to a third-party vendor as payment for video production and related services provided to Political Committee 1 and Candidate A on or about July 30, 2013.

b.  On or about July 30, 2013, Person A authorized a check in the amount of approximately $2,000.00 from Fifth Third Bank account *****563, which was held in the name of S.R. Holding Co., Inc., to a third-party vendor as payment for lighting and related services provided to Political Committee 1 and Candidate A on or about July 30, 2013.

c.  On or about July 31, 2013, Person A authorized a check in the amount of approximately $10,715.00 from Fifth Third Bank account *****563, which was held in the name of S.R. Holding Co., Inc., to a third-party vendor as payment for audio-video production and related services provided to Political Committee 1 and Candidate A on or about July 30, 2013.

d.  On or about August 1, 2013, Person A authorized a check in the amount of approximately $8,380.00 from Fifth Third Bank account *****563, which was held in the name of S.R. Holding Co., Inc., to a third-party vendor as payment

for audio-video production and related services provided to Political

Committee 1 and Candidate A on or about July 30, 2013.

### August 2013 "Consulting Services Retainer" Payment from S.R. Holding to EMMONS

e. On or about August 14, 2013, while providing political consulting services to
Political Committee 1 and Candidate A, EMMONS issued an invoice from
Emmons & Co., Inc., to Lundy's Special Events, seeking payment of a
"Consulting Services Retainer" in the amount of $20,000.00.

f. On or about August 14, 2013, LUNDERGAN authorized a check in the
amount of $20,000.00 from Bank of Lexington account *****925 which was
held in the name of S.R. Holding Co., Inc., to EMMONS, in payment for
services that EMMONS and others provided to Political Committee 1 and
Candidate A in or around July and August 2013.

### September 2013 S.R. Holding Payment to EMMONS

g. On or about September 5, 2013, EMMONS authorized a check in the amount
of $12,838.71 from Traditional Bank account *****762 which was held in the
name of Emmons & Company, Inc., to a third-party vendor as payment for
recorded telephone calls disseminated on behalf of Political Committee 1 and
Candidate A in or around July and August 2013.

h. On or about September 6, 2013, EMMONS authorized a check in the amount
of $682.77 from Traditional Bank account *****762, which was held in the
name of Emmons & Company, Inc., to Person B as reimbursement for

expenditures incurred by Person B during his work for Political Committee 1 and Candidate A.

i.  On or about September 6, 2013, while providing political consulting services to Political Committee 1 and Candidate A, EMMONS issued an invoice from Emmons & Co., Inc., to Lundy's Special Events, seeking payment of a "Consulting Services Retainer" in the amount of $13,521.48 — the combined total of EMMONS's September 5, 2013, payment for the recorded telephone calls disseminated on behalf of Political Committee 1 and Candidate A, and EMMONS's September 6, 2013, payment reimbursing Person B for expenses incurred during his work for Political Committee 1 and Candidate A.

j.  On or about September 1, 2013, LUNDERGAN authorized a check in the amount of $13,521.48 from Fifth Third Bank account *****563, which was held in the name of S.R. Holding Co., Inc., to Emmons & Company, Inc., as reimbursement to EMMONS for the checks issued by EMMONS on or about September 5, 2013, and September 6, 2013, in payment for services provided to Political Committee 1 and Candidate A.

September 2013 "Consulting Services Retainer" Payment from S.R. Holding to EMMONS

k.  On or about September 10, 2013, while providing political consulting services to Political Committee 1 and Candidate A, EMMONS issued an invoice from

Emmons & Co., Inc., to Lundy's Special Events, seeking payment of a "Consulting Services Retainer" in the amount of $23,500.00.

l. On or about September 10, 2013, LUNDERGAN authorized a check in the amount of $23,500.00 from Bank of Lexington account *****925, which was held in the name of S.R. Holding Co., Inc.., to Emmons & Company, Inc., in payment for services that EMMONS and others, specifically including Person B, provided to Political Committee 1 and Candidate A in or around August and September 2013.

m. On or about September 11, 2013, EMMONS authorized a check in the amount of $3,500.00 from Traditional Bank account *****762, which was in the name of Emmons & Company, Inc., to Person B, in payment for services that Person B provided to Political Committee 1 and Candidate A in or around August and September 2013.

### EMMONS Invoices to S.R. Holding for Mailing Expenses

n. On or about September 12, 2013, EMMONS authorized a check in the amount of $4,140.00 from Traditional Bank account *****762, which was in the name of Emmons & Company, Inc., to a third-party vendor in payment for mail-related services provided to Political Committee 1 and Candidate A in or around September and October 2013.

o. On or about October 22, 2013, EMMONS authorized a check in the amount of $1,605.58 from Traditional Bank account *****762, which was in the name of

Emmons & Company, Inc., to a third-party vendor in payment for mail-related services provided to Political Committee 1 and Candidate A in or around September and October 2013.

p.  On or about September 18, 2013, while providing political consulting services to Political Committee 1 and Candidate A, EMMONS issued an invoice from Emmons & Co., Inc., to Lundy's Special Events, seeking payment of $4,200.00 for "Lexington Project Shipping Expense" and $1,606.00 for "Processing Expense."

q.  On or about September 20, 2013, EMMONS authorized a check in the amount of $2,491.36 from Traditional Bank account *****762, which was in the name of Emmons & Company, Inc., to a third-party vendor in payment for mail-related services provided to Political Committee 1 and Candidate A in or around September and October 2013.

r.  On or about October 22, 2013, EMMONS authorized a check in the amount of $773.97 from Traditional Bank account *****762, which was in the name of Emmons & Company, Inc., to a third-party vendor in payment for mail-related services provided to Political Committee 1 and Candidate A in or around September and October 2013.

s.  On or about October 8, 2013, while providing political consulting services to Political Committee 1 and Candidate A, EMMONS issued an invoice from Emmons & Co., Inc., to Lundy's Special Events, seeking payment of

$2,600.00 for "East Kentucky Project Expenses" and $773.97 for "Processing Expense."

### EMMONS Invoice Seeking Corporate Reimbursement for Robocall Expenses

t.  On or about October 10, 2013, while providing political consulting services to Political Committee 1 and Candidate A, EMMONS issued an invoice from Emmons & Company, Inc., to Lundy's Special Events, seeking payment of $2,750.00 for "Marketing Expense."

u.  On or about November 19, 2013, EMMONS authorized a check in the amount of $2,750.00 from Traditional Bank account *****762, which was held in the name of Emmons & Company, Inc., to a third-party vendor as payment for recorded telephone calls disseminated on behalf of Political Committee 1 and Candidate A in or around August and September 2013.

### October 2013 "Consulting Services Retainer" Payment from S.R. Holding to EMMONS

v.  On or about October 8, 2013, while providing political consulting services to Political Committee 1 and Candidate A, EMMONS issued an invoice from Emmons & Company, Inc., to Lundy's Special Events, seeking payment of a "Consulting Services Retainer" in the amount of $23,500.00.

w.  On or about October 14, 2013, EMMONS authorized a check in the amount of $3,500.00 from Traditional Bank account *****762, which was in the name of Emmons & Company, Inc., to Person B, in payment for services that Person B

provided to Political Committee 1 and Candidate A in or around September and October 2013.

x.   On or about October 15, 2013, LUNDERGAN authorized a check in the amount of $23,500.00 from Fifth Third Bank account *****563, which was held in the name of S.R. Holding Co., Inc., to Emmons & Company, Inc., in payment for services that EMMONS and others, specifically including Person B, provided to Political Committee 1 and Candidate A in or around September and October 2013.

S.R. Holding Payment to EMMONS for Technological Support Vendor Expense

y.   On or about October 15, 2013, while providing political consulting services to Political Committee 1 and Candidate A, EMMONS issued an invoice from Emmons & Company, Inc., to Lundy's Special Events, seeking payment of $2,850.00 for an "Internet Maintenance Upgrade" at the offices of Political Committee 1 in Frankfort, Kentucky.

z.   On or about October 24, 2013, LUNDERGAN authorized a check in the amount of $2,850.00 from Fifth Third Bank account *****563, which was held in the name of S.R. Holding Co., Inc., to Emmons & Company, Inc., in payment for services that EMMONS and others, specifically including a technological support vendor, provided to Political Committee 1 and Candidate A in or around October 2013.

aa. On or about August 11, 2014, EMMONS authorized a check in the amount of $2,485.47 from Traditional Bank account *****762, which was in the name of Emmons & Company, Inc., to a third-party vendor in payment for technological support services that the vendor provided to Political Committee 1 and Candidate A in or around October 2013.

<u>November 2013 "Consulting Services Retainer" Payment from S.R. Holding to</u>

<u>EMMONS</u>

bb. On or about November 15, 2013, while providing political consulting services to Political Committee 1 and Candidate A, EMMONS issued an invoice from Emmons & Company, Inc., to Lundy's Special Events, seeking payment of a "Consulting Services Retainer" in the amount of $23,500.00.

cc. On or about November 15, 2013, LUNDERGAN authorized a check in the amount of $23,500.00 from Bank of Lexington account *****925, which was held in the name of S.R. Holding Co., Inc., to Emmons & Company, Inc., in payment for services that EMMONS and others, specifically including Person B, provided to Political Committee 1 and Candidate A in or around October and November 2013.

dd. On or about November 15, 2013, EMMONS authorized a check in the amount of $3,500.00 from Traditional Bank account *****762, which was in the name of Emmons & Company, Inc., to Person B, in payment for services that Person

B provided to Political Committee 1 and Candidate A in or around October and November 2013.

### Subsequent S.R. Holding Payments to EMMONS

ee. On or about December 5, 2013, EMMONS authorized a check in the amount of $335.94 from Traditional Bank account *****762, which was held in the name of Emmons & Company, Inc., to a third-party vendor as payment for recorded telephone calls disseminated on behalf of Political Committee 1 and Candidate A in or around November and December 2013.

ff. On or about December 1, 2013, LUNDERGAN authorized a check in the amount of $8,900.00 from Bank of Lexington account *****925, which was held in the name of S.R. Holding Co., Inc., to EMMONS, in payment for services that EMMONS and others provided to Political Committee 1 and Candidate A in or around August through December 2013.

gg. On or about January 14, 2014, LUNDERGAN authorized a check in the amount of $10,776.87 from Fifth Third Bank account *****563, which was held in the name of S.R. Holding Co., Inc., to Emmons & Company, Inc., at least as partial payment for services that EMMONS and others provided to Political Committee 1 and Candidate A, including mail-related services by a third-party vendor in or around September and October 2013.

<u>Other S.R. Holding Payments to Vendors</u>

hh. On or about September 8, 2014, LUNDERGAN authorized a check in the
amount of $5,900.06 from Fifth Third Bank account *****563, which was
held in the name of S.R. Holding Co., Inc., to a third-party vendor as payment
for shirts, hats, and other apparel and merchandise provided to Political
Committee 1 and Candidate A in or around August 2013.

ii. On or about March 23, 2015, LUNDERGAN authorized a check in the amount
of $8,693.03 from Fifth Third Bank account *****563, which was held in the
name of S.R. Holding Co., Inc., to a third-party vendor as payment for stickers,
lapel pins, can holders, and other merchandise provided to Political Committee
1 and Candidate A in or around August 2013 and January 2014.

jj. On or about April 21, 2015, LUNDERGAN authorized a check in the amount
of $5,000.00 from Fifth Third Bank account *****563, which was held in the
name of S.R. Holding Co., Inc., to a third-party vendor as payment for audio-
video production and related services provided to Political Committee 1 and
Candidate A on or about October 15, 2014.

kk. On or about May 6, 2015, LUNDERGAN authorized a check in the amount of
$5,053.80 from Bank of Lexington account *****925, which was held in the
name of S.R. Holding Co., Inc., to a third-party vendor as payment for shirts
and other merchandise provided to Political Committee 1 and Candidate A in
or around August and September 2013.

ll.  On or about July 12, 2015, LUNDERGAN authorized a check in the amount of $3,860.64 from Traditional Bank account *****795, which was held in the name of S.R. Holding Co., Inc., to a third-party vendor as payment for signs and other merchandise provided to Political Committee 1 and Candidate A in or around February 2014.

mm.   On or about July 12, 2015, LUNDERGAN authorized a check in the amount of $3,530.67 from Traditional Bank account *****795, which was held in the name of S.R. Holding Co., Inc., to a third-party vendor as payment for services including the dissemination of recorded telephone calls on behalf of Political Committee 1 and Candidate A in or around 2013 and 2014.

nn. On or about August 5, 2015, LUNDERGAN authorized a check in the amount of $5,000.00 from Bank of Lexington account *****925, which was held in the name of S.R. Holding Co., Inc., to a third-party vendor as payment for audio-video production and related services provided to Political Committee 1 and Candidate A on or about October 15, 2014.

oo. On or about August 23, 2015, LUNDERGAN authorized a check in the amount of $5,000.00 from Community Trust Bank account *****018, which was held in the name of S.R. Holding Co., Inc., to a third-party vendor as payment for signs and other merchandise provided to Political Committee 1 and Candidate A in or around June 2014.

pp. On or about September 29, 2015, Person A authorized a check in the amount of $5,000.00 from Fifth Third Bank account *****563, which was held in the name of S.R. Holding Co., Inc., to a third-party vendor as payment for audio-video production and related services provided to Political Committee 1 and Candidate A on or about October 15, 2014.

qq. On or about December 15, 2015, LUNDERGAN authorized a check in the amount of $2,591.74 from Community Trust Bank account *****018, which was held in the name of S.R. Holding Co., Inc., to a third-party vendor as payment for stickers and other merchandise provided to Political Committee 1 and Candidate A in or around October 2014.

rr. On or about December 30, 2015, LUNDERGAN authorized a check in the amount of $5,000.00 from Bank of Lexington account *****925, which was held in the name of S.R. Holding Co., Inc., to a third-party vendor as payment for audio-video production and related services provided to Political Committee 1 and Candidate A on or about October 15, 2014.

All in violation of 18 U.S.C. § 371.

## COUNT TWO
### 52 U.S.C. §§ 30118, 30109(d)(1)(A)(i)
### 18 U.S.C. § 2
### (Corporate Contributions)

22.     Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated by reference as if set forth fully herein.

23.     In or around July 2013, and continuing through in or around December 2013, in the Eastern District of Kentucky and elsewhere, the defendants,

### GERALD G. LUNDERGAN and
### DALE C. EMMONS,

aided and abetted by one another, knowingly and willfully caused contributions of corporate money, aggregating $25,000.00 and more during the 2013 calendar year, by S.R. Holding Co., Inc., in connection with an election at which a United States Senator was to be voted for, and a primary election held to select candidates for such election.

All in violation of 52 U.S.C. §§ 30118 and 30109(d)(1)(A)(i), and 18 U.S.C. § 2.

## COUNT THREE
## 18 U.S.C. §§ 1001(a)(2), 2
### (False Statements)

24.     Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated by reference as if set forth fully herein.

25.     On or about October 14, 2013, in the Eastern District of Kentucky and elsewhere, in a matter within the jurisdiction of the executive branch of the government of the United States, the defendants,

**GERALD G. LUNDERGAN and**
**DALE C. EMMONS,**

aided and abetted by one another, knowingly and willfully caused the submission of a materially false, fictitious, and fraudulent statement and representation, that is the filing by an unwitting authorized campaign committee of a candidate for the Office of United States Senator with the Federal Election Commission, through the Secretary of the Senate, of a report that was materially false in failing to report the source and amount of contributions to the campaign by a corporation, namely S.R. Holding Co., Inc.

All in violation of 18 U.S.C. §§ 1001(a)(2) and 2.

## COUNT FOUR
### 18 U.S.C. §§ 1519, 2
### (Falsification of a Record or Document)

26.     Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated by reference as if set forth fully herein.

27.     On or about October 14, 2013, in the Eastern District of Kentucky and elsewhere, the defendants,

### GERALD G. LUNDERGAN and
### DALE C. EMMONS,

aided and abetted by one another, knowingly concealed, covered up, falsified, and made false entries in a record and document, and caused others to do so, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, and in relation to and contemplation of such matter, to wit: LUNDERGAN and EMMONS caused a report to be filed by Political Committee 1 with the Federal Election Commission, through the Secretary of the Senate, that falsely failed to report the source and amount of contributions to the campaign by a corporation, namely S.R. Holding Co., Inc.

All in violation of 18 U.S.C. §§ 1519 and 2.

## COUNT FIVE
### 18 U.S.C. §§ 1001(a)(2), 2
### (False Statements)

28.     Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated by reference as if set forth fully herein.

29.     On or about January 30, 2014, in the Eastern District of Kentucky and elsewhere, in a matter within the jurisdiction of the executive branch of the government of the United States, the defendants,

**GERALD G. LUNDERGAN and
DALE C. EMMONS,**

aided and abetted by one another, knowingly and willfully caused the submission of a materially false, fictitious, and fraudulent statement and representation, that is the filing by an unwitting authorized campaign committee of a candidate for the Office of United States Senator with the Federal Election Commission, through the Secretary of the Senate, of a report that was materially false in failing to report the source and amount of contributions to the campaign by a corporation, namely S.R. Holding Co., Inc.

All in violation of 18 U.S.C. §§ 1001(a)(2) and 2.

<u>**COUNT SIX**</u>
**18 U.S.C. §§ 1519, 2**
**(Falsification of a Record or Document)**

30.     Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated by reference as if set forth fully herein.

31.     On or about January 30, 2014, in the Eastern District of Kentucky and elsewhere, the defendants,

**GERALD G. LUNDERGAN and**
**DALE C. EMMONS,**

aided and abetted by one another, knowingly concealed, covered up, falsified, and made false entries in a record and document, and caused others to do so, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, and in relation to and contemplation of such matter, to wit: LUNDERGAN and EMMONS caused a report to be filed by Political Committee 1 with the Federal Election Commission, through the Secretary of the Senate, that falsely failed to report the source and amount of contributions to the campaign by a corporation, namely S.R. Holding Co., Inc.

All in violation of 18 U.S.C. §§ 1519 and 2.

## COUNT SEVEN
### 18 U.S.C. §§ 1001(a)(2), 2
### (False Statements)

32.     Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated by reference as if set forth fully herein.

33.     On or about October 15, 2015, in the Eastern District of Kentucky and elsewhere, in a matter within the jurisdiction of the executive branch of the government of the United States, the defendant,

### GERALD G. LUNDERGAN,

knowingly and willfully caused the submission of a materially false, fictitious, and fraudulent statement and representation, that is the filing by an unwitting authorized campaign committee of a candidate for the Office of United States Senator with the Federal Election Commission, through the Secretary of the Senate, of a report that was materially false in failing to report the source and amount of contributions to the campaign by a corporation, namely S.R. Holding Co., Inc.

All in violation of 18 U.S.C. §§ 1001(a)(2) and 2.

## COUNT EIGHT
### 18 U.S.C. §§ 1519, 2
### (Falsification of a Record or Document)

34.     Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated by reference as if set forth fully herein.

35.     On or about October 15, 2015, in the Eastern District of Kentucky and elsewhere, the defendant,

### GERALD G. LUNDERGAN,

knowingly concealed, covered up, falsified, and made false entries in a record and document, and caused others to do so, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, and in relation to and contemplation of such matter, to wit: LUNDERGAN caused a report to be filed by Political Committee 1 with the Federal Election Commission, through the Secretary of the Senate, that falsely failed to report the source and amount of contributions to the campaign by a corporation, namely S.R. Holding Co., Inc.

All in violation of 18 U.S.C. §§ 1519 and 2.

## COUNT NINE
### 18 U.S.C. §§ 1001(a)(2), 2
### (False Statements)

36.     Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated by reference as if set forth fully herein.

37.     On or about January 30, 2016, in the Eastern District of Kentucky and elsewhere, in a matter within the jurisdiction of the executive branch of the government of the United States, the defendant,

### GERALD G. LUNDERGAN,

knowingly and willfully caused the submission of a materially false, fictitious, and fraudulent statement and representation, that is the filing by an unwitting authorized campaign committee of a candidate for the Office of United States Senator with the Federal Election Commission, through the Secretary of the Senate, of a report that was materially false in failing to report the source and amount of contributions to the campaign by a corporation, namely S.R. Holding Co., Inc.

All in violation of 18 U.S.C. §§ 1001(a)(2) and 2.

## COUNT TEN
## 18 U.S.C. §§ 1519, 2
### (Falsification of a Record or Document)

38.     Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated by reference as if set forth fully herein.

39.     On or about January 30, 2016, in the Eastern District of Kentucky and elsewhere, the defendant,

### GERALD G. LUNDERGAN,

knowingly concealed, covered up, falsified, and made false entries in a record and document, and caused others to do so, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, and in relation to and contemplation of such matter, to wit: LUNDERGAN caused a report to be filed by Political Committee 1 with the Federal Election Commission, through the Secretary of the Senate, that falsely failed to report the source and amount of contributions to the campaign by a corporation, namely S.R. Holding Co., Inc.

All in violation of 18 U.S.C. §§ 1519 and 2.

**A TRUE BILL**


ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY


ANNALOU TIROL
ACTING CHIEF
PUBLIC INTEGRITY SECTION

## **PENALTIES**

**COUNTS 1-3, 5, 7, 9:**    Not more than 5 years imprisonment, $250,000 fine, and 3 years supervised release.

**COUNTS 4, 6, 8, 10:**    Not more than 20 years imprisonment, $250,000 fine, and 3 years supervised release per count.

**PLUS:**    Mandatory special assessment of $100 per count.

**PLUS:**    Restitution, if applicable.